226 So.2d 340 (1969)
Sylvia MENDEZ, Individually and As Administratrix of the Estate of Aristides Perez Mendez, Deceased, Petitioner,
v.
Ed BLACKBURN, Jr., Former Sheriff of Hillsborough County, Florida, Respondent.
No. 37257.
Supreme Court of Florida.
July 16, 1969.
Rehearing Denied September 29, 1969.
*341 Frates, Fay, Floyd & Pearson and Guy B. Bailey, Jr., Miami, for petitioner.
Lucius M. Dyal, Jr., of Shackleford, Farrior, Stallings & Evans and David H. McClain, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for respondent.
THORNAL, Justice.
We have for review a decision of a district court of appeal which allegedly collides with prior decisions of this Court on the same point of law. Mendez v. Blackburn, 205 So.2d 697 (2d Dist.Ct.App.Fla. 1968).
We must determine the extent of liability of a Florida sheriff for the acts of a deputy.
Petitioners Mendez are husband and wife. They sued respondent Blackburn, the former sheriff of Hillsborough County. Petitioners claim damages for injuries allegedly received as a result of a false arrest, malicious prosecution, and assault and battery committed by two deputies, Weldon and Mount. They were on plain clothes duty with the vice squad when they undertook to arrest Mr. Mendez for committing a felony in their presence, i.e., carrying on bolita activities. The deputies were named as defendants. They were never served because Mount died and Weldon departed the jurisdiction for other reasons. The criminal charge against Mr. Mendez for carrying on bolita activities was later dismissed.
The complaint stated three different causes of action against the sheriff. They all allege that on May 15, 1964, the two deputies while "under the direction, control and supervision" of the sheriff did hit, choke, beat and falsely arrest Mr. Mendez, and, also, "leaped over the counter and maliciously hit" Mrs. Mendez who apparently was pregnant at the time. Actually, while searching for evidence one of the deputies leaped over the counter and in the process collided with Mrs. Mendez on the other side. At the time, the deputy thought she was disposing of a paper sack of bolita tickets. It turned out to be a sack of scraps from tables in the Mendez restaurant where all of the activity occurred.
The Sheriff's motion to dismiss the complaint was denied. His motion for a final summary judgment was granted. The trial *342 judge found that there was no material issue of fact because the deputies acted beyond the scope of their authority and the Sheriff did not consent to, nor have knowledge of, their actions. Therefore, the trial judge determined as a matter of law that there was no way that the Sheriff could be held liable for the acts of the deputies. The judge relied heavily on an affidavit by then Sheriff Blackburn to the effect that "the alleged acts were not directed or ordered" by him; "that the alleged acts were done without the knowledge and consent" of the Sheriff; that the deputies were never at any time authorized by the Sheriff to commit the wrongful acts; and that if committed, "such acts were entirely beyond the scope of their authority as deputy sheriffs. * * *"
On appeal the Second District Court of Appeal affirmed. It held that a sheriff is liable for acts of deputies only when they abuse the power which they have, as contrasted to usurping power which they do not have. It was further held that the sheriff could not be held liable here because "the acts complained of were without the Sheriff's knowledge or consent, and the only orders the deputies had were to enforce, not violate, the law."
The standard for derivative liability of a sheriff announced by the decision under review conflicts with the expressed concepts of liability announced by our opinion in Holland v. Mayes, 155 Fla. 129, 19 So.2d 709 (1944). The cited decision announced that "it is generally held that the sheriff and his deputy are one and the same person and that the acts of the deputy may be imputed to the sheriff." It is not a master and servant or principal and agent relationship. The sheriff acts through his deputy and is charged with knowledge of his acts and impliedly consents to all acts done by the deputy in his official capacity. To the extent, therefore, that the Mendez decision required the Sheriff's knowledge of, or consent to, the acts complained of in the posture in which they were committed here, there is a conflict with the decision of this Court in Holland v. Mayes, supra, and, also, with the decision of another district court of appeal in Waters v. Dade County 169 So.2d 505 (3d Dist.Ct.App.Fla. 1964). We, therefore, proceed to the merits.
We must decide whether the courts below were correct in holding as a matter of law that a jury could not find respondent Sheriff liable for the acts of his deputies on the basis of this record if relevant testimony were believed. It should be recalled that the case was disposed of on a motion for a summary judgment. The criteria for liability, announced by the trial judge and affirmed by the District Court, was simply whether the Sheriff knew of, or consented to, the acts which allegedly caused the injury. The holding should be that neither knowledge nor consent is a critical element when, as here, the injury results from an act committed by virtue of the office held by the deputy.
An important Florida decision in this area is Swenson v. Cahoon, 111 Fla. 788, 152 So. 203 (1933). The opinion cited 1927 Compiled General Laws § 4578, which is now Fla. Stat. § 30.07 (1963), F.S.A. It reads:
"Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible." (Emphasis added.)
The opinion holds that in effect the statute adds little to the common law rule on the subject. On rehearing, the Court then stated that a sheriff will be held liable when a deputy abuses the power vested in him. He will not be held liable when a deputy usurps or asserts a power which he does not have. The opinion then draws the distinction between "abuse of power" and "usurpation of power." It states:

"To `abuse power' is to use it in an extravagant manner, to employ it contrary to the law of its use, or to use it improperly *343 and to excess. The `usurpation of power' has reference to the unlawful assumption, or seizure and exercise of power not vested in one, or where one interrupts another in the exercise of a right belonging to him." (Emphasis added.)
So, in the case at bar, the deputies had the power to make an arrest. They simply exercised the power abusively or excessively. At least that is the claim.
In testing the motion for summary judgment by the record factors and justifiable inferences most strongly against it, Shaffran v. Holness, 93 So.2d 94 (Fla. 1957), the following relevant facts emerge:
(1) The deputies were duly appointed and were on duty with the Sheriff's vice squad when the alleged assaults occurred.
(2) The deputies were empowered to make an arrest without a warrant when a felony was being committed in their presence.
(3) They were in the act of exercising this power when the alleged injuries were inflicted.
(4) If the injuries to Mr. and Mrs. Mendez were inflicted, they resulted from the excessive use of a power which the deputies had.
(5) The power to make the arrest and search arose by virtue of the office held by the deputies.
(6) In making the arrest they did not assume or usurp a power which they did not have. Their authority to make the arrest was not merely colored by the office which they held. It was a direct and essential incident created by virtue of the office itself.
(7) The Sheriff did not know that the alleged wrongs were being committed and he certainly did not direct them.
Swenson v. Cahoon, supra, has been followed in a number of cases which shed some light on our solution.
Roberts v. Dean, 133 Fla. 47, 136 Fla. 421, 187 So. 571 (1939), merely recognizes Swenson by holding that the sureties on a sheriff's bond can be held liable when he exercises the power which he has but not when he usurps power which he does not have.
Goodrich v. Lawrence, 138 Fla. 287, 189 So. 233 (1939), further illustrates the distinction. A sheriff was held free from liability for an assault committed by a deputy who at the time was not exercising any duty or function of the office. The wrongdoer was still a deputy sheriff, but the wrong was a completely independent, personal act totally unrelated to any responsibility arising by virtue of his office.
Malone v. Howell, 140 Fla. 693, 192 So. 224 (1939), is significant because of the distinction which it draws between acting "under color of office" and acting "by virtue of office." The former involves a pretense or claim of a right to do an act unrelated to the duties of the office. The latter involves the exercise of a power which arises by virtue of the office. So it is said that when a deputy acts merely "under color of office" he usurps the power and the sheriff is not liable. When he acts "by virtue of the office" he exercises a power which is an incident of the office itself and the sheriff is liable if the power is abusively or negligently executed. Thus, in Malone, it was held:
"The acts for which a sheriff or his sureties may be held liable are termed acts done `virtue officii', and those which they cannot be held liable are termed `colore officii'. The distinction is that acts are done `virtue officii' when they are within the authority of the officer, but done in an improper exercise of his authority or in abuse of the law, while acts are done `colore officii' where they are of such nature the office gives him no authority to do them. * * *" (Emphasis added).
*344 We have discussed Holland v. Mayes, supra, as the source of conflict with the decision under review. One statement from Mayes is misleading and should be eliminated because it imposes an undue responsibility upon the sheriff. In the opinion it is stated:
"* * * It is generally held that the Sheriff and his deputy are one and the same person and that the acts of the deputy may be imputed to the Sheriff. There is accordingly no such relation as master and servant or principal and agent existing between them. The Sheriff acts through his deputy, is charged with knowledge of his acts and consents to all acts done officially or under color of his office. * * *" (Emphasis added.)
With the exception of the last clause, "OR under color of his office," the quoted statement is correct. As we have pointed out from Swenson v. Cahoon, supra, Malone v. Howell, supra, and Mayes, itself, a sheriff is not liable when a deputy acts merely "under color of office" because that involves a usurpation of power, as contrasted to an abuse of a power which arises by "virtue of office." As we have said, this is a critical distinction in resolving the problem of a sheriff's derivative liability.
The rule was also accurately diagnosed in Waters v. Dade County, 169 So.2d 505 (3d Dist.Ct.App.Fla. 1964), and in Posey v. Starr, 208 So.2d 287 (4th Dist.Ct.App.Fla. 1968). In Posey it will be noted that the sheriff was excused from liability because the alleged assault was an independent act committed by a deputy without cause while a prisoner was in custody following a lawful arrest. We note in passing that Posey was not brought to us for review.
We have noted Fla. Stat. § 30.07 (1963), F.S.A. We call attention also to Fla. Stat. § 30.09(3) (1963), F.S.A., and Fla. Stat. § 30.55(1) (1963), F.S.A. Implicit in these statutes is a suggestion of legislative approval of the rule which we have announced above. Actually they add little to the rule of the common law announced by this Court in Swenson v. Cahoon, supra.
In the instant matter the District Court quite correctly differentiated between liability and non-liability on the basis of abuse of power as contrasted to usurpation of power. However, that Court added the further requirement that the Sheriff's knowledge of, or consent to, the alleged wrongful acts was also an essential condition to liability. The testimony offered by the depositions here would support a jury inference that the two deputies abused a power arising by virtue of their office, to wit: the power to make an arrest without a warrant for a felony being committed in the officers' presence. Hence, the summary judgment should not have been granted.
Mr. Mendez has died pending the litigation and Mrs. Mendez has been substituted as his personal representative.
The decision of the District Court is quashed and the cause is remanded to that Court for further proceedings consistent herewith.
It is so ordered.
ERVIN, C.J., and DREW and THOMAS (Retired), JJ., concur.
CARLTON, J., concurs specially with opinion.
CALDWELL (Retired), J., and SPECTOR, District Court Judge, dissent.
CARLTON, Justice (concurring specially).
I concur in the result reached that summary judgment should not have been granted.